## AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT

I, Joel N. Hegarty, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, being duly sworn according to the law, hereby state that the facts set forth in this affidavit are true and correct to the best of my knowledge, information, and belief:

## INTRODUCTION AND AGENT BACKROUND

1. Your Affiant, Joel N. Hegarty, is a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), United States Department of Justice, within the meaning of Title 18, United States code, Section 3051, and is an officer of the United States empowered by law with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of the laws of the United States.

2. Your Affiant's primary duties consist of the enforcement of federal firearms laws, armed narcotics trafficking laws and conspiracy laws. Prior to graduating from the Federal Law Enforcement Training Center in 2020 and becoming an ATF Special Agent, Your Affiant was employed with Ernst and Young for over four (4) years, working as a Senior Forensic Accountant in Ernst and Young's Forensic Accounting practice. While employed as an ATF Special Agent, Your Affiant has conducted and participated in numerous federal investigations. Your Affiant has participated in the execution of numerous federal and state search warrants involving violent crime, organized crime, illegal firearms possession, firearms trafficking, the use and trafficking of narcotics, and armed narcotics trafficking. Your Affiant is familiar with federal criminal laws pertaining to firearms and drug violations.

3. Your Affiant works with other law enforcement officers with decades of experience enforcing federal firearms laws, and Your Affiant benefits from their knowledge. Your Affiant investigates violations of federal firearms laws and federal narcotics laws in the normal course of his duties and is familiar with the facts of this case.

## AFFIDAVIT PURPOSE

4. This affidavit is submitted to support a criminal complaint charging ANGEL JAVIER MARIN-CANABAL with: (1) a violation of 18 U.S.C. § 933(a)(3) (conspiracy to traffic in firearms, in violation of 18 U.S.C. § 933(a)(1)), and (2) a violation of 21 U.S.C. § 846 (conspiracy to distribute and possess with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C)) (hereafter, the "**Subject Offenses**"). This affidavit also is submitted to support the issuance of an arrest warrant for ANGEL JAVIER MARIN-CANABAL.

5. The facts in this affidavit come from my personal observations, my review of audio and/or video recordings and recorded communications from this investigation, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is probable cause for the requested complaint and arrest warrant, and it does not set forth all of my knowledge about this matter.

## INVESTIGATION

6. The United States, including ATF, is conducting a criminal investigation of ANGEL JAVIER MARIN-CANABAL and his co-conspirators regarding the Subject Offenses and related criminal offenses.

7. As further explained below, between in or about July 8, 2025, through on or about July 14, 2025, MARIN-CANABAL conspired with L.A.H.C. (hereafter, "Coconspirator 1") and others unknown, to distribute and possess with intent to distribute a mixture and substance containing fentanyl. During that time period, a confidential informant (hereafter the "CI") communicated with Coconspirator 1 about arranging sales of fentanyl and firearms to the CI and an ATF Special Agent acting in an undercover capacity (hereafter, a "UC").

8. Coconspirator 1 and the CI discussed the terms of the transactions, including that Coconspirator 1 would provide a "sample" of the fentanyl before the CI purchased larger quantities of fentanyl from Coconspirator 1. After Coconspirator 1 and the CI agreed to the time, location, and general terms of the transaction, MARIN-CANABAL then showed up to conduct the transaction with the CI and UC. Specifically, on or about July 8, 2025, as part of the conspiracy, MARIN-CANABAL sold the CI and UC a firearm with an obliterated serial number and distributed a "sample" of approximately one gram of fentanyl to the CI and UC. MARIN-CANABAL and the CI talked to Coconspirator 1 by phone during the transaction too.

9. The undercover meeting and communications discussed below are only those with relevance as they pertain to the criminal activities of MARIN-CANABAL for the specific purpose of this criminal complaint.[1]

10. The CI has been given monetary compensation in exchange for giving law enforcement reliable information on criminal activities on numerous prior occasions, and no information provided by the CI has subsequently been proven false. The CI is not trying to reduce any sentence in exchange for his/her cooperation. The CI has a past felony conviction, but none within the last 10 years, and none involving falsehoods or deception.

### *Background Regarding Coconspirator 1*

11. On May 15, 2025, law enforcement officers arrested several persons in Denver, Colorado, as part of an investigation into a murder-for-hire conspiracy. During the arrest, three firearms were recovered from the possession of the arrestees. Five individuals subsequently were charged with 18 U.S.C. § 1958(a) (use of a facility of interstate commerce with the intent to commit murder for hire, and conspiracy to do the same) in connection with the conspiracy.

12. On May 16, 2025, Coconspirator 1, using WhatsApp phone number +57 321 505 6803, sent messages to a UC in Spanish that were translated as, "You did a good job getting my

[1] The communications between the CI and MARIN-CANABAL or Coconspirator 1 were conducted in Spanish. Your affiant has relied on English summaries of those communications provided by the CI, other persons who are fluent in Spanish, and/or automated translation tools.

people. I knew you guys were police. Just like you got my people yesterday, I got something for you and your people. Cocksucker." This was the first instance of Coconspirator 1 communicating with the ATF using WhatsApp phone number +57 321 505 6803, with WhatsApp contact name "hijo de dios". Based on training and experience and discussions with other law enforcement officers, Your Affiant knows that "Hijos de Dios" is a group name commonly used by members of Tren de Aragua.

13. Between the dates of May 16, 2025, and July 8, 2025, the ATF, utilizing both a UC and the CI, continued to engage in recorded communications with Coconspirator 1. On May 25, 2025, Coconspirator 1, communicating through WhatsApp, sent messages to the UC in Spanish that were translated as, "If you say you're not a cop, give me my due. Although I know you're cops... You want me to hand you over to someone more powerful than me from Tren de Aragua... let's get it right. I know you're from the D.E.A."

14. Coconspirator 1 further advised a UC that in order to prove the UC wasn't police, the UC needed to send money to Coconspirator 1 to remedy the fact that Coconspirator 1 lost three firearms during the arrests on May 15, 2025. Coconspirator 1 provided the UC with Zelle account information, and directed the UC to send money to the Zelle account as payment for the firearms that were seized during the May 15, 2025 murder-for-hire operation. On June 2, 2025, the ATF transferred funds to the Zelle account Coconspirator 1 provided.

15. After the payment was made, Coconspirator 1 appeared to stop suspecting that the UC was an undercover law enforcement officer and continued to communicate and deal with a UC and the CI.

***Undercover Purchase – July 8, 2025***

16. Between on or about June 30, 2025, and on or about July 8, 2025, at the direction of investigators, the CI engaged in conversation with Coconspirator 1 over WhatsApp about purchasing firearms and narcotics from Coconspirator 1. Coconspirator 1 continued to utilize WhatsApp phone number +57 321 505 6803 during these conversations. During the conversations, Coconspirator 1 sent pictures to the CI showing a firearm and what appeared to be kilogram quantities of narcotics, packaged in plastic vacuum sealed bags. One of the images Coconspirator 1 sent on June 30, 2025, is copied below.



17. The CI requested a sample of fentanyl from Coconspirator 1, explaining that if the sample was good, the CI would later purchase a kilogram of the fentanyl powder. Coconspirator 1 agreed to provide a sample of the fentanyl.

18. Through additional WhatsApp communications, the CI and Coconspirator 1 initially agreed to conduct the transaction for the fentanyl sample and the firearm on July 2, 2025. The July 2, 2025 meeting, however, was eventually called off because Coconspirator 1 repeatedly delayed the meeting time. On the evening of July 2, 2025—after the meeting had been called off—Coconspirator 1 sent a video recording showing the firearm and two items that appeared to be samples of drugs. Two screenshots from the video are copied below.





19. In the following days, the CI and Coconspirator 1 continued communicating via WhatsApp to arrange a new date for the transaction. On or about July 7, 2025, the CI and Coconspirator 1 agreed that the transaction for the firearm and fentanyl sample would occur the next day, July 8, 2025, in the parking lot of a large retail store in Denver, Colorado.

20. On July 8, 2025, the CI and Coconspirator 1 agreed that the transaction would take place around 2:00 p.m. Around that time, the UC and the CI drove together in a vehicle to the agreed-upon location, which is in Denver, Colorado. The CI communicated with Coconspirator 1 over WhatsApp about the person who would be meeting with the CI. Coconspirator 1 described the person as having red hair. Coconspirator 1 also sent a picture of the vehicle, a gray Suzuki, that the person was using.

21. At the agreed-upon parking lot, an investigator observed a male parked in a 2011 gray Suzuki SX4 bearing temporary tag 7343118. The male, who was later identified as ANGEL JAVIER MARIN-CANABAL, had dyed red hair and was the sole occupant of the gray Suzuki.

22. MARIN-CANABAL obtained a black firearm case from the trunk of the Suzuki. MARIN-CANABAL then entered the undercover vehicle (UCV) and met with the UC and the

CI in the UCV. When MARIN-CANABAL entered the UCV, the UC observed that MARIN-CANABAL was using his phone, which was in speaker mode, to speak with Coconspirator 1.

23. The meeting with MARIN-CANABAL in the UCV was audio and video recorded. During the meeting, MARIN-CANABAL gave the CI and UC a firearm in a soft black case. After the CI initially examined the firearm, MARIN-CANABAL opened a pocket on the firearm case, and pulled out a small knotted piece of plastic containing the sample of fentanyl. MARIN-CANABAL handed the sample to the CI. MARIN-CANABAL subsequently unknotted the plastic wrap, and put the fentanyl on a digital scale the UC was using. The UC weighed the powder fentanyl, which showed a weight of approximately 1 gram. MARIN-CANABAL then repackaged the substance in the plastic wrap.

24. During the meeting, the CI discussed with Coconspirator 1 on the phone that the firearm MARIN-CANABAL brought did not have a "clip," meaning a magazine. During the meeting, the CI also advised MARIN-CANABAL that the CI and UC wanted to purchase the firearm to protect themselves while conducting their purported drug trafficking business.

25. The UC and Coconspirator 1 discussed on the phone the price for the firearm, and the UC provided cash to MARIN-CANABAL for the firearm and fentanyl sample. The CI and UC reduced the price because the firearm did not have a magazine.

26. Toward the end of the meeting, MARIN-CANABAL gave his phone number to the CI so the CI could communicate directly with MARIN-CANABAL on WhatsApp regarding future purchases. MARIN-CANABAL provided the WhatsApp number 720-765-6362 as his phone number. MARIN-CANABAL indicated that they would be able to provide a kilogram of fentanyl to the CI and UC if the CI and UC liked the sample MARIN-CANABAL provided.

27. MARIN-CANABAL subsequently exited the UCV and returned to the gray Suzuki.

28. Three screenshots from a recording of the meeting between MARIN-CANABAL and the UC and CI are copied below.







29. The firearm and fentanyl sample MARIN-CANABAL sold to the CI and UC were later entered into ATF evidence. Further examination of the firearm showed that it was a Linyi Junxing Cheetah, model Cheetah, 12GA caliber shotgun, bearing an obliterated serial number. The firearm was preliminarily examined by an ATF Special Agent who has acquired knowledge and experience relating to determining the manufacturer and origin of firearms and ammunition. The ATF Special Agent determined that it was a firearm as defined in Title 18 U.S.C., Chapter

44, Section 921(a)(3); that it was not manufactured in the State of Colorado; and therefore, that it had traveled in and/or affected interstate and/or foreign commerce prior to being recovered as part of this investigation. An image of the firearm is copied below.



30. The fentanyl sample MARIN-CANABAL distributed to the UC and CI was later submitted to the DEA Southwest Laboratory for chemical analysis. According to the chemical analysis report, the substance contained approximately 0.908 grams of a mixture and substance containing N-Phenyl-N-[1-(2-phenylethyl) -4-piperidinyl] propanamide (fentanyl) and lidocaine. An image of the fentanyl sample is copied below.



31. Following this transaction, between July 8, 2025, and July 14, 2005, Coconspirator 1 and MARIN-CANABAL continued to engage in communications with the CI attempting to sell the CI additional firearms and narcotics. The communications included discussions of sales of fully-automatic firearms, as well as firearms with extended magazines. At no point did either Coconspirator 1 or MARIN-CANABAL remove themselves from the attempts to traffic additional firearms or distribute drugs to the CI.

32. Coconspirator 1 was subsequently arrested on July 30, 2025, in Medellin, Colombia, pursuant to a Provisional Arrest Warrant.

33. The individual who met with the UC and CI was subsequently identified as ANGEL JAVIER MARIN-CANABAL based in part on a comparison of the video recording from the transaction and a review of known images of MARIN-CANABAL. Copied below is one of the known images of MARIN-CANABAL, which your affiant received from Homeland

Security Investigations (HSI) investigators. Your affiant recognized MARIN-CANABAL as the person who sold the firearm and fentanyl sample to the UC and CI on July 8, 2025.



34. MARIN-CANABAL is currently in ICE custody pending removal proceedings.

**CONCLUSION**

35. Based on the aforementioned information, Your Affiant submits that probable cause exists to believe that, from on or about July 8, 2025, through on or about July 14, 2025, in the State and District of Colorado, ANGEL JAVIER MARIN-CANABAL committed the following offenses: (1) a violation of 18 U.S.C. § 933(a)(3) (conspiracy to traffic in firearms, in violation of 18 U.S.C. § 933(a)(1)), and (2) a violation of 21 U.S.C. § 846 (conspiracy to distribute and possess with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C)).

[Continued on the next page.]

I, Joel N. Hegarty, Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, hereby depose and state that the above-mentioned information is true to the best of my information, knowledge and belief.

/s/ Joel N. Hegarty
Joel N. Hegarty
ATF Special Agent

Sworn to and subscribed before me this 19th day of February, 2026.

SCOTT T. VARHOLAK
Chief United States Magistrate Judge
District of Colorado

**This affidavit and application was reviewed and is submitted by Talia Bucci, Assistant United States Attorney.**